DAVIDOFF HUTCHER & CITRON LLP
*Proposed Attorneys for the Debtor*
120 Bloomingdale Road
White Plains, New York 10605
(914) 381-7400
Robert L. Rattet
Jonathan S. Pasternak

*Hearing Date: August 10, 2023*
*Hearing Time: 10:00 a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                                                Chapter 11

HELLO LIVINGSTON EXTENDED LLC,
                                                                                Case No.: 23-22422(SHL)
                                        Debtor.
--------------------------------------------------------X

**DEBTOR'S MOTION FOR ENTRY OF ORDER (I) APPROVING BID PROCEDURES
IN CONNECTION WITH THE PROPOSED SALE
OF ASSETS OF THE ESTATE AND (II) AUTHORIZING AUCTION SALE**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

The debtor and debtor-in-possession, Hello Livingston Extended LLC (the "Debtor"), by

its undersigned attorneys, seeks the entry of an order (the "Bid Procedures Order"), a proposed

form of which is annexed to this application as Exhibit A, authorizing and approving the terms of

sale (the "Bid Procedures") for the proposed sale of the Debtor's real property as more fully set

forth below, and authorizing the Auction[1] pursuant to 11 U.S.C.§§105(a), 363 and 365 of Rules

2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

(the "Motion").  In support thereof, the Debtor states:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bid
Procedures.

**JURISDICTION AND VENUE**

1.      Jurisdiction over this application is vested in the United States District Court for this District pursuant to 28 U.S.C. §1334.

2.      This is a core proceeding arising under title 11 of the United States Code (the "Bankruptcy Code"). See 28 U.S.C. §157(b)(1). The statutory predicate for the relief sought is Sections 105(a), 363 and 365 of the Bankruptcy Code.

3.      Venue of this civil proceeding in this district is proper pursuant to 28 U.S.C. §1409.

**BACKGROUND**

4.      On June 2, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.      The Debtor is in possession of its property and management of its affairs as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee of unsecured creditors has been appointed.

6.      The Debtor owns commercial real property located at 291 Livingston Street, Brooklyn, New York 11217 (the "Property"). The Property consists of a mostly constructed 22 story building intended as a hotel. The building is approximately 95% complete.

7.      The Debtor acquired the Property in 2018 for $14,800,000. The acquisition was funded in part by the Debtor's two 50% members, Perigrove 1001 LLC and 291 Livingston Holdings LLC and in part from financing obtained from Acres Loan Origination, LLC ("Acres"), who also advanced funds for the construction and development of the Property, and holds a perfected first priority mortgage thereon in the approximate outstanding amount of $34,000,000.

8.      The Property consists of a flag lot that is 20 feet wide on Livingston Street, 40 Feet wide at the rear on Grove Place, and 137.5 feet deep, with a 95% complete, approximately 46,000 square foot building located thereon, The Property is zoned for commercial use. The Property is fully insured, secured, and maintained. Upon information and belief, the Debtor is current in the payment of all real estate taxes

9.      The Debtor intended to construct, with project and construction financing from Acres, a 21-floor building intended for hotel and high-end residences/mixed use. Unfortunately, the Debtor ran out of working capital before the building and construction project was completed. The building is currently 95% complete but still requires approximately $6 million to complete.

10.     As a result of the cessation of construction activity and the Debtor's inability to complete the project, the three loans made by Acres fell into default. Acres is currently owed approximately $34 million.

11.     In addition, there are approximately 19 junior mechanics' liens filed against the Property totaling approximately $3 million. The Debtor believes the Property has a current fair market value in excess of $30,000,000.

12.     The Debtor has insufficient capital to complete the building. In addition, the Debtor has been unable to obtain refinancing or additional capital in amounts sufficient to satisfy, inter alia, the Acres debt.

13.     In order to maximize the value of the Property, the Debtor, in its business judgment, has determined that it is in the best interests of the Debtor and its creditors to market and sell the Property in its current, "as is" condition.

14.     To that end, the Debtor believes that the value of the Property will be maximized, absent refinancing, by a sale of the Property via auction or competitive sale process. To assist the Debtor in marketing and selling the Property, the Debtor has sought Court authority to employ North Point Realty Group ("North Point") as its real estate consultant and broker to either sell the Property at an auction or solicit and secure a commitment or commitments for a refinancing of the Property.

15.     The Debtor is in the process of filing a Chapter 11 Liquidating Plan, which plan contemplates that the Property, absent refinancing, will be sold pursuant to the Bid Procedures.

## RELIEF REQUESTED

16.     By this Motion, the Debtor seeks entry of the Bid Procedures Order, pursuant to sections 105(a) and 363 of the Bankruptcy Code authorizing it to implement the Bid Procedures, annexed hereto as Exhibit "B" for the sale of the Property. The Debtor also seeks authority to sell the Property to the highest and best bidder(s), free and clear of all liens, claims and encumbrances, but subject to the right of Acres to credit bid pursuant to Section 363(k) of the Bankruptcy Code. Accordingly, it is important that the Bid Procedures be in place, and the authority to sell be granted.

**Marketing Process**

17.　Subject to entry of an order authorizing the retention of North Point, North Point is ready to commence the marketing process for the Property. Accordingly, it is important that the Bid Procedures be expeditiously approved. The Property shall be offered for sale "as is", "where is", and free and clear of all liens, claims and encumbrances (other than any Assumed Contracts), with any such liens, claims and encumbrances to attach to the proceeds in the order, priority and extent as they existed on the Petition Date.

**Proposed Bid Procedures**

18.　To solicit, receive and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Bid Procedures to govern the sale of the Property optimally and expeditiously. The Bid Procedures are designed to encourage all entities to put their best bids forward and enhance the value to the Debtor's estate. All parties are directed to review the Bid Procedures for their specific terms.

19.　In furtherance of the Bid Procedures Order, North Point will prepare sales and marketing materials for circulation along with the Bid Procedures to potential buyers in order to maximize the value of the Property. Interested purchasers may be required to enter into confidentiality agreements with North Point and/or the Debtor prior to their being provided with confidential information regarding the Property.

20.　The Bid Procedures set forth the parameters for which the Debtor and North Point will consider bids for the purchase of the Property. Additionally, the Bid Procedures: (a) provide that the Debtor will send all bidders a form of Purchase and Sale Agreement (the "PSA"), (b) set a bid deadline; (c) define requirements for qualified bids; and (d) set an auction date on or before 60 days after entry of the Bid Procedures Order. The Bid Procedures also provide for, at the

Debtor's discretion, the selection of one or more stalking horses as well as the possibility that the Debtor provides for a breakup fee (the "Breakup Fee"). In the event the Debtor selects one or more stalking horses, the Debtor will file a supplemental notice with the Court identifying the stalking horse and the terms of the stalking horse bid, including any Breakup Fee, and providing parties with the opportunity to object. The Bid Procedures also recognize Acres' right to submit a credit bid for the Property.

21.     The Plan provides for the sale of the Property contemplated by the Bid Procedures and, upon the selection of a Successful Bidder, at the conclusion of the Auction(s) the Debtor will present the successful bid(s) to the Court for approval.

## BASIS FOR RELIEF

### I.     The Relief Sought in the Bid Procedures Order Is in the Bests Interests of the Debtor's Estate and Should be Approved

22.     By this Motion and the Plan, the Debtor seek this Court's authorization to sell the Property by public auction sale in accordance with the Bid Procedures.

23.     The sale of the Property is appropriate and necessary; however, approval of the Bid Procedures is warranted to ensure that the highest and best offer will be received for the Property.  The Debtor anticipates that the closing on the sale of the Property will be conducted pursuant to an order of this Court.

24.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets by the estate. See, e.g., *In re Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that bid procedures that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are

"presumptively valid"); *In re 995 Fifth Ave. Assocs.*, L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

25.     The goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Debtor'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

26.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. See, e.g., *Integrated Resources,* 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.,* 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

27.     The Debtor believes that the Bid Procedures will promote active bidding and will elicit the best and highest offers available for the Property. The Bid Procedures will allow the Debtor to conduct the sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best bids for the Property, and who can demonstrate the ability to close a transaction. The Debtor believes that the Bid Procedures will encourage competitive bidding, that they are consistent with other procedures previously

approved by this District, and are appropriate under the relevant standards governing auction

proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources,* 147

B.R. at 659; *995 Fifth Avenue Assocs.,* 96 B.R. at 28; *see e.g., In re BearingPoint, Inc.,* No. 09-

10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving similar bidding procedures); *In re*

*Silicon Graphics, Inc.,* No. 09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009); *In re Steve &*

*Barry's Manhattan LLC,* No. 0812579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008); *In re Fortunoff*

*Fine Jewelry and Silverware, LLC,* No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008).

28.     Based upon agreement by the Debtor, the Debtor expects to request approval of an

Auction process that will last from now through September, 2023.

29.     Section 363(b) of the Bankruptcy Code governs the sale of assets outside the

ordinary course of business. Section 363(b)(1) provides, in relevant part, that "[t]he [Debtor],

after notice and hearing, my use, sell or lease, other than in the ordinary course of business,

property of the estate..." 11 U.S.C. § 363(b)(1). The terms of such sale are generally within the

sound discretion of the debtor. *See In re Iridium Operating,  LLC*, 478 F.3d (2d Cir. 2007) ("In

this Circuit, the sale of the asset of the estate under §363(b) is permissible if the 'judge

determined [the] §363(b) application expressly find[s] from the evidence presented before [him

or her] at the hearing that [there is] a good business reason to grant such an application.' (citing

*Comm Of Equity Sec.  Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F. 2d 1063, 1071 (2d

Cir. 1983)); *see also Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co.*

*v. LTV  Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 145 (**2nd** Cir. 1993); *In re Dial-A-*

*Mattress Operating Corp.*, 2009 Bankr. LEXIS 1801, at *12 (Bankr. E.D.N.Y. June 24, 2009)

("The business judgment test is the standard for Section 363 sales in this Circuit." (citations

omitted)); *In re Hirsch*, 360 B.R. 43, 45-46, 48, 50 (Bankr. E.D.N.Y. 2007) (requiring "existence

of 'a good business reason to grant such an application' (quoting *In re Lionel Corp.*, 722 F.2d at 1071)); *In re Thomson McKinnon Sec., Inc.*, 120 B.R. 301, 307-08 (Bankr. S.D.N.Y. 1990).

30.     In addition, Section 105(a) of the Bankruptcy Code grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case. 2 COLLIER ON BANKRUPTCY ¶105.01 (Alan N. Resnick and Henry J. Sommer Eds., 16th ed.).

31.     In accordance with Bankruptcy Rule 6004(f)(a), sales of property outside of the ordinary course of business may be by private sale or by public sale. In practice, the preferred method is to conduct a public sale which will most often result in a greater number of potential bidders in the shortest amount of time. That is, in order to determine that a private sale has yielded the highest or best offer, property generally must remain on the market for a significantly longer period of time than when offered at a public sale.

32.     Here, sound business reasons exist for the proposed sale, which will effectively result in the sale of substantially all of the Debtor's assets. See *In re Dial-A-Mattress Operating Corp.*, 2009 Bankr. LEXIS 1801 (a debtor's decision to sell substantially all of its assets to the highest bid at an auction was an appropriate business judgment decision because the highest bid presented the greatest benefits to the Chapter 11 estate).

33.     The Debtor has a substantial business justification for the proposed sale of the Property. The Debtor believes that the sale of the Property is appropriate and necessary and Acres has agreed to the Bid Procedures.

**II.      The Property Should Be Sold Free and Clear Of All Liens**

34.      Bankruptcy Code Section 363 permits the sale of assets to be free and clear of liens, claims and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the property is disputed; or (e) the entity with an interest in the last asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. *See* 11 U.S.C. §363(f).

35.      Since Bankruptcy Code Section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to approve the sale of the Property "free and clear" of liens, claims, encumbrances and interests (other than any Assumed Contracts). *See* 11 U.S.C. §363(f); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (recognizing that Section 363(f) of the Bankruptcy Code is written in disjunctive, and holding that Court may approve sale "free and clear" provided that at least one subsection of Section 363(f) is met), *cert dismissed*, 503 U.S. 978 (1992); *Citicorp Homeowners Servs., Inc. v. Elliot (in re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

36.      Here, as reflected in the Bid Procedures, the sale of the Property is being conducted pursuant to, *inter alia,* Bankruptcy Code Section 363(f). All liens will attach to the sale proceeds in the same order and priority as they existed on the Debtor's Petition Date.

37.      In addition to the first priority liens of Acres, various creditors have filed mechanics' liens against the Property. A schedule of the mechanics' liens are annexed hereto as Exhibit "C".

38.     Whether such liens are secured within the meaning of Section 506(a) of the Bankruptcy Code will depend upon the results of the Sale and whether the net Sale proceeds will be sufficient to satisfy Acres' secured claim in full.

39.     Notwithstanding, the Court can authorize the Sale free and clear of, inter alia, all mechanics liens under Sections 363(f)(4) or (5) of the Bankruptcy Code.

40.     These statutory provisions allow sales of property free and clear of liens, claims and encumbrances asserted by lienholders who do not consent to the sale if the liens are either (a) the subject of bona fide dispute (11 U.S.C. §363(f)(4)) or (b) if the holders of the liens could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest (11 U.S.C. §363(f)(5)).

41.     A bankruptcy court's power to authorize a sale under section 363(b) is to be exercised at the court's discretion. *See In re WPRY-TV, Inc.,* 983 F.2d 336, 340 (1st Cir. 1993). Courts have frequently authorized the sale of all, or substantially all, of a debtor's assets pursuant to section 363(b) and in the absence of a reorganization plan where there is a "sound business purpose." *See Lionel Corp. v. Committee of Equity Security Holders (In re Lionel),* 722 F.2d 1063, 1071 (2d Cir. 1983)(rejecting the requirement that only an emergency situation permits the use of section 363(b) and setting forth the "sound business purpose" test in the context of a sale of substantially all of a debtor's assets under section 363(b)). *See also, Stephen Indus., Inc. v. McClung,* 789 F.2d. 386, 390 (6th Cir. 1986); *Abbotts Dairies of Pennsylvania,* 788 F.2d. 143, 147-49 (3d Cir. 1986); *The Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines),* 780 F.2d 1223, 1226 (5th Cir. 1986); *CadKey Corp.,* 317 B.R. 19, 23 (D, Mass. 2004). Articulating further the "sound business purpose" test, one bankruptcy court held that the court would approve a sale of substantially all of the debtor's

assets outside of a plan where (1) there is a good business reason for proceeding with a sale

transaction as opposed to pursuing the formulation and confirmation of a chapter 11 plan; (2)

there is an articulated business justification for proceeding with a sale transaction immediately or

in the near-term; (3) the sale transaction reflects an appropriate exercise of business judgment

and fulfillment of the debtor's fiduciary duties; and (4) there is no viable higher and better

alternative to the proposed sale transaction. *In re Boston Generating, LLC,* 440 B.R. 302, 315

(Bankr. S.D.N.Y. 2010).

42.    The Debtor has demonstrated the requisite cause for approval of the Sale under

Section 363(b). The Debtor further requests authorization to sell the Property free and clear of

liens, claims and encumbrances and other interests subject to any provisions contained in a

Qualified Bid. The Court may authorize such a sale under Section 363(f). The Court, in *In re*

*Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at *7 (Bankr. S.D.N.Y. Oct. 24,

2022) recently stated:

> Section 363(f) of the Bankruptcy Code permits a debtor to sell property, under
> section 363(b) or (c), free and clear of any interest in such property of an
> entity other than the estate. 11 U.S.C. § 363(f). However, a sale free and clear
> of liens may be approved only if at least one of the following five conditions
> are met: (1) applicable non-bankruptcy law permits sale of such property free
> and clear of such interest; (2) such entity consents; (3) such interest is a lien
> and the price at which such property is to be sold is greater than the aggregate
> value of all liens on such property; (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled to accept a monetary satisfaction of such
> interest. *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa.1988) (noting that section
> 363(f) is written in the disjunctive, authorizing a trustee or debtor-in-
> possession to sell property of the estate free and clear of all liens "if any of the
> five conditions of § 363(f) are met ... ").

> *In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at *7
> (Bankr. S.D.N.Y. Oct. 24, 2022)

*See also, In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988)(section 363(f) is written in the

disjunctive; a court may approve a sale "free and clear" provided at least one of the subsections

is met).

43.     The Debtor's marketing efforts are expected to be substantial if not exhaustive.

Despite these efforts, the sale amount achieved may not exceed the amount of Acres' secured

claim.  The Debtor therefore may require relief under Section 363(f) in order to deliver free and

clear title to the Successful Purchaser as required under the Bid Procedures.

44.     First, the Debtor satisfies Section 363(f)(1) since New York law permits the sale of

the Property at foreclosure. This issue is most thoroughly discussed in *In re Boston Generating,*

*LLC,* 440 B.R. 302, (Bankr. S.D.N.Y. 2010), where the Court approved a $1.1 billion bid for the

Debtor's assets over the objections of unsatisfied junior lienors. The Court held:

> The Second Lien Agent argues that the Debtors have not met their burden to
> prove that the Second Lien Lenders could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of their liens. It relies on *Clear*
> *Channel,* where the Court held that (i) the fact that a lender could be satisfied
> with money in respect of credit extended and (ii) the existence of cramdown
> under section 1129(d) did not mean there were legal or equitable proceedings
> that could compel satisfaction of a junior lien for less than payment in full.
> *Clear Channel,* 391 B.R. at 45–47. As noted above, this Court declines to
> follow *Clear Channel.* Section 363(f)(5) does not require that the sale price
> for the property exceed the value of the interests. **As recognized in a post-**
> ***Clear Channel* decision from a Bankruptcy Court in the Ninth Circuit,**
> **the existence of judicial and nonjudicial foreclosure and enforcement**
> **actions under state law can satisfy section 363(f)(5).** *See In re Jolan, Inc.,*
> 403 B.R. 866, 870 (Bankr.W.D.Wash.2009).[28] Numerous legal and equitable
> procedures exist by which the Second Lien Lenders could be forced to accept
> less than full payment of the Second Lien Debt.[29] Thus, the Court finds that
> because the Second Lien Lenders could be compelled under state law to
> accept general unsecured claims to the extent the sale proceeds are not
> sufficient to pay their claims in full, section 363(f)(5) is satisfied. (emphasis
> supplied).
>
> *In re Bos. Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010)

In New York, the existence of "judicial and nonjudicial foreclosure" remedies constitute a "legal or equitable proceeding" under which the junior lienholders "could be compelled…to accept a money satisfaction of such interest." 11 U.S.C. §363(f)(5). See also *In re Grubb & Ellis Co.*, No. 12-10685 MG, 2012 WL 1036071, at *10 (Bankr. S.D.N.Y. Mar. 27, 2012), aff'd, 523 B.R. 423 (S.D.N.Y. 2014); *Celsius Network, supra.*

45.    The Debtor has therefore satisfied Section 363(f)(5) as to each relevant lien or secured claim. If any of the secured creditors asserting a security interest against the Property are not willing to consent to the sale of the Property, the Court is nonetheless empowered to authorize the sale free and clear of any such creditor's interest under subsection (f)(5) as long as that creditor receives the value of its collateral. *In re Boston Generating, LLC,* 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010). *See also, In re Beker Indus. Corp.,* 63 B.R. 474 (Bankr. S.D.N.Y. 1986); *In re Oneida Lake Dev., Inc.,* 114 B.R. 352, 356-57; *In re Collins,* 180 B.R. 447 (Bankr. E.D. Va. 1995). Given the proposed process and the testing of the market resulting therefrom, as well as the preservation of credit-bidding rights, each secured creditor will receive the value of its collateral in the Sale, which, subject to the results of the Auction, in the case of all parties holding secured interests junior in priority to Purchaser's secured claim may be zero.

46.    As set forth in the Debtor's Schedules of Assets and Liabilities, the liens of each of the mechanics' lienors are in dispute and the Property can therefore be sold free and clear of said interests pursuant to Bankruptcy Code Section 363(f)(5).

47.    The Court, in *In re Downtown Athletic Club of New York City, Inc.*, No. M-47 (JSM), 2000 WL 744126, at *4 (S.D.N.Y. June 9, 2000) explained:

> Under the Code, a debtor "may sell property ... free and clear of *any interest* in such property of an entity other than the estate*" if, *inter alia,* "such interest is in bona fide dispute ." *See* 11 U.S.C. § 363(f) (emphasis added). Here, there is a bona fide dispute about whether Defendants have an interest in the

> property. *See In re Collins,* 180 B.R. 447, 452 (Bankr.E.D.Va.1995) (noting
> that there must be "an objective basis for either a factual or legal dispute as to
> the validity of the debt"). Defendants maintain that they have a right under the
> RSL to obtain leases to their rooms in the DAC Building, and CBA and the
> DAC contend that no such right exists. Consequently, pursuant to Section
> 363(f)(4), if Defendants' asserted rights under the RSL to obtain leases are
> "interests" in the DAC Building, then the DAC sold, and CBA purchased, the
> building free and clear of "any interest" that Defendants had in the building.

> *In re Downtown Athletic Club of New York City, Inc.*, No. M-47 (JSM), 2000
> WL 744126, at *4 (S.D.N.Y. June 9, 2000)

See also *In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004) ("Moreover,

courts have recognized that to qualify as a "bona fide dispute" under § 363(f)(4), the propriety of

the lien does not have to be the subject of an immediate or concurrent adversary proceeding.");

*In re Richards*, No. 8:21-BK-10635-ES, 2022 WL 16754394, at *5 (B.A.P. 9th Cir. Nov. 7,

2022) ("Such interest is subject to bona fide dispute when, "there is an objective basis for either a

factual or legal dispute" regarding the lien's validity); *In re Southland Royalty Co. LLC*, 623 B.R.

64, 99 (Bankr. D. Del. 2020) ("Finally, with respect to section 363(f)(4), this subsection will

permit Southland to sell the Wamsutter Assets free and clear of Wamsutter's interests if there is

an objective factual or legal dispute as to the validity of the interests.[142] "The goal of § 363(f)(4)

is to allow the sale of property subject to dispute so that liquidation of the estate's assets need not

be delayed while such disputes are being litigated."); *In re Bella Vista Assocs., LLC*, No. 07-

18134 JHW, 2007 WL 4555891, at *4 (Bankr. D.N.J. Dec. 18, 2007) ("Section 363(f)(4) allows

a trustee to sell property when the interest asserted in the property is in bona fide dispute. The

phrase "bona fide dispute" is not defined in the Code. Courts interpreting § 363(f)(4) generally

look to "whether there is an objective basis for either a factual or legal dispute as to the validity

of the asserted interest.").

48.     Thus, under, inter alia, 11 U.S.C. §363(f)(4) and well as (f)(5), the Debtor may

sell the Property free and clear of all liens, claims and encumbrances.

**III.     The Successful Bidder Should Be Afforded
        Protection Under Bankruptcy Code Section 363(m)**

49.     Bankruptcy Code Section 363(m) affords protection to a good faith purchaser in

any interest in property purchased from an estate, whether the sale conducted is later reversed or

modified on appeal. Specifically, Bankruptcy Code Section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. §363(m). *See Allstate Ins. Co. v. Hughes* 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994)

("Section 363(m)...provides that good faith transfers of property will not be affected by the

reversal or modification on appeal of an unstayed order, whether or not the transferee knew of

the pendency of the appeal"); *In re Stein & Day, Inc.* 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990)

("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay

pending appeal").

50.     The Second Circuit has held that a party would have to show fraud or collusion

between a buyer and the debtor in possession or trustee in order to demonstrate a lack of good

faith. *See Kabro Assoc. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111

F.3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a

purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser

and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders").

See *also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

51.     Subject to Court approval, the Property will be sold at a public auction sale.  Each sale process will be conducted at arm's length through an independent process. As such, the Debtor submits that the successful bidders should be afforded good faith purchaser status under Bankruptcy Code Section 363(m).

**IV.     The Proposed Process for the Debtor to Designate A
 Stalking Horse and Provide Breakup Fees Should Be Approved.**

52.     The Debtor also seeks authority to designate a stalking horse and offer customary bid protections including a break-up fee as part of the Bid Procedures. In the event the Debtor designates a stalking horse, that party will subject their bid to higher and better offers, and likely may request the enticement of a break-up fee if the stalking horse loses at auction to another bidder. The use of a stalking horse in a public auction process for sales pursuant to section 363 of the Bankruptcy Code is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by locking in a purchase price "floor" before exposing an asset to auction. As a result, stalking horse bidders virtually always require breakup fees and other forms of bidding protections as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process. Thus, the use of bidding protections, including breakup fees, has become an established practice in Chapter 11 cases.

53.     Bankruptcy courts have approved bidding incentives, similar to the breakup fee, under the business judgment rule, which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See e.g., In re BearingPoint, Inc.,* No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a breakup fee of approximately 3% of the purchase price); *In re Silicon Graphics, Inc.,* No. 0911701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (approving breakup fee of approximately 2.8%

of the purchase price); *In re Steve & Barry's Manhattan LLC,* No. 0812579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (approving break-up fee of 2% of the purchase price); *In re Fortune Fine Jewelry and Silverware, LLC,* No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) (approving break-up fee of approximately 2.8% of the purchase price); *In re Bally Total Fitness of Greater New York, Inc.,* No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007) (approving break-up fee of 4.3% of the purchase price).

54.     With respect to breakup fees in bankruptcy cases, courts have generally considered three factors when assessing proposals for such fees: (a) whether the relationship of the parties who negotiated the breakup fee is tainted by self-dealing or manipulation; (b) whether the fee hampers, rather than encourages, bidding; and (c) whether the amount of the fee is unreasonable relative to the proposed purchase price. *See In re Integrated Res., Inc.,* 147 B.R., at 657.

55.     The Debtor believes that the ability to select a stalking horse and allowance of a breakup fee is beneficial to its estate and its creditors, as a stalking horse bid would establish a floor for further bidding and potentially increase the value of the Property for the benefit of the estate. Moreover, this Motion proposes to provide parties notice with regard to any stalking horse, which will state the Debtor's designation of a stalking horse, including terms for payment of any breakup fee. Parties will have an opportunity to object to the Debtor's designation of a stalking horse and payment of a breakup fee. If a party chooses to object within five days from the filing of the stalking horse notice and such objection cannot be resolved consensually, the Debtor will seek approval of the stalking horse and breakup fee by scheduling a hearing with the Court. If no objections to the stalking horse notice are received, the stalking horse and breakup fee shall be deemed approved by the Court without the need for further Court order. Further, if the breakup

fee were to be paid, it will be because the Debtor has received a higher or otherwise superior offer.

## CONCLUSION

56.     As a result of all of the foregoing, the Debtor submits that the Bid Procedures are reasonable, appropriate, and within the Debtor's sound business judgment under the circumstances because the Bid Procedures are designed to maximize the value to be received by the Debtor's estate.

57.     The Debtor has served this Motion on the Office of the United States Trustee, counsel for Acres, all mechanics' lienors, all known creditors, the taxing authorities and all parties who have filed notices of appearance in this case. The Debtor submits that such service be deemed appropriate and sufficient under the circumstances.

58.     No prior application for the relief sought has been made by the Debtor to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter the Bid Procedures

Order granting the relief requested herein and such other and further relief as may be just and

appropriate.

Dated:  White Plains, New York
       July 5, 2023

                                 DAVIDOFF HUTCHER & CITRON LLP
                                 *Proposed Attorneys for the Debtor*
                                 120 Bloomingdale Road, Suite 100
                                 White Plains, New York 10605
                                 (914) 381-7400


                            By: */s/ Jonathan S. Pasternak*
                               Jonathan S. Pasternak
                               Robert L. Rattet