**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re:                                          Chapter 11

**HELLO LIVINGSTON EXTENDED LLC,**              Case No.:  23-22422 (SHL)

                              Debtor.
-----------------------------------------------------------X

### HELLO LIVINGSTON EXTENDED LLC'S DISCLOSURE STATEMENT
### FOR CHAPTER 11 PLAN OF LIQUIDATION

**DAVIDOFF HUTCHER & CITRON LLP**
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Jonathan S. Pasternak, Esq.
Robert L. Rattet, Esq.

*Attorneys for the Debtor*

Dated:   White Plains, New York
         July 7, 2023

Hello Livingston Extended LLC (the "Debtor") has filed its Chapter 11 Plan of Liquidation dated July 7, 2023 (the "Plan") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). This Disclosure Statement for the Debtor's Chapter 11 Plan of Liquidation for the Debtor (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan filed to sell substantially all of the assets of the estate of the Debtor pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Debtor believes that Confirmation of the Plan is in the best interests of all the Debtor's creditors.**

### SUMMARY OF THE PLAN

The Debtor's Plan provides for the liquidation of the Debtor by liquidating the real property and improvements thereon, commonly known as and located at 291 Livingston Street, Brooklyn, New York 11217 (Block 161. Lot 61; the "Property"), and use the proceeds from the Sale[1] and Available Cash to pay Claims, as more fully described below and in the Plan.

The Debtor has already engaged North Point Real Estate Group (the "Broker") as their real estate advisor and it shall market and auction the Property and the Property Causes of Action (the "Sale") pursuant to 11 U.S.C. §§ 363, 1123(a)(5)(D), and 1123(b)(4) to obtain the highest and best price, in accordance with the applicable provisions of the Bankruptcy Code. The Sale shall be conducted following confirmation of the Plan, but subject to certain conditions set forth in detail herein below and in the Plan. The Bid Procedures are attached hereto as **Exhibit A**.

In the event that the net Sale proceeds and/or Available Cash on the Effective Date are insufficient to provide creditors of the Debtor's estate with the distributions required to be made on the Effective Date, any shortfall will be funded by the Debtor in accordance with the Plan.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represents the Debtor's best estimate of the total amount of Claims and Interests filed or scheduled in this Case. These estimates have been developed by the Debtor based on its own research, the Court's Claims Register, the Debtor's Schedules and certain other documents of public record. Although the Debtor believes that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings as set forth in the Plan.

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|---|---|---|---|---|
| 1 | Acres Secured Claim | Impaired | $34,496,796.81 | Unknown |
| 2 | Non-Tax Priority Claims | Unimpaired | $0 | 100% |
| 3 | General Unsecured Claims | Impaired | $3,100,000 (not incl. Acres Unsecured Claim) | Minimum 10% |
| 4 | Interests | Impaired | $0 | Unknown |

### CONFIRMATION OF THE PLAN

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a combined hearing (the "Confirmation Hearing") to consider approval of this Disclosure Statement and Confirmation of the Plan, **on September __, 2023 at 10:00 a.m., prevailing eastern time, in the United States Bankruptcy Court for the Southern District of New York, United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601** (although the hearing may take place remotely due to the COVID crisis). The Bankruptcy Court has directed that objections, if any, to the Confirmation of the Plan be filed and served **on or before September __, 2023 at 5:00 p.m. (prevailing eastern time)**.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan. **The Debtor believes that the Plan will satisfy all applicable requirements of Section 1129(a) of the Bankruptcy Code**. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors, and other parties regardless of whether they have objected to the Plan. If an impaired Class votes against the Plan, the Debtor intends on seeking confirmation under Section 1129(b) of the Bankruptcy Code, which the Debtor believes will be satisfied.

---

[2] The amounts set forth in this schedule are not and should not be deemed admissions by the Debtor as to the validity or amount of any claim and the Debtor reserves all rights to object to any claim in this case. The amounts listed in this column as to claims assumes all filed claims are allowed and includes such filed claims along with scheduled claims to the extent there is not a corresponding proof of claim. Claims (other than the Acres Claim) could be the subject of objections, which, if granted, would increase the estimates provided herein of recoveries to holders of Allowed Claims.

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Debtor, or the Debtor's assets or Property or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

## VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN

### A. Manner of Voting on Plan

Before voting, this Disclosure Statement as well as the Plan, should be read in its entirety. You should only use the Ballot sent to you with this Disclosure Statement, if any, to cast your vote for or against the Plan.

If you hold a Claim in Classes 1 or 3 or an Interest in Class 4, included in the package of materials forwarded to you along with this Disclosure Statement and the Plan, is a ballot for your acceptance or rejection of the Plan. You should complete, date and sign your ballot and return it to Davidoff Hutcher & Citron LLP, 120 Bloomingdale Road, Suite 100, White Plains, NY 10605, attn: Jonathan S. Pasternak, Esq or via email to jsp@dhclegal.com attorneys for the Debtor. All ballots must be **received** prior to **5:00 P.M. on September __ 2023**. A copy of the form of the ballots are annexed hereto as Exhibit B.

### B. Claim Holders Entitled to Vote

Under the Bankruptcy Code, any holders of Claims in Classes that are "impaired" under the Plan are entitled to vote to accept or reject the Plan, unless such Class neither receives nor retains any property under the Plan (in which case such Class is deemed to have rejected the Plan). Bankruptcy Code Section 1124 provides generally that a Class is impaired if the legal, equitable or contractual rights of the Claims or Interests in that Class are altered.

Subject to the exceptions provided below, any holder whose Claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtor and such Claim is not scheduled as disputed, contingent or unliquidated; or (ii) such Claim holder has filed a proof of Claim which is not otherwise a Disputed Claim.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is temporarily allowed by the Debtor or by an order of the Bankruptcy Court in an estimated amount which it deems proper for the purpose of voting to accept or reject the Plan. In other words, only holders of Allowed Claims in impaired classes may vote to accept or reject the Plan. A Claim to which an objection has been filed or a Claim (i) which is listed on the Debtor's Schedules as disputed, unliquidated or contingent; and (ii) with respect to which a superseding proof of Claim has not been filed, is not an Allowed Claim for voting purposes, unless the Claim is settled by agreement, the Court allows the Claim (in whole or in part) by Final Order. Upon request of a party-in-interest, the Court may temporarily allow or estimate a Disputed Claim for the purpose of voting on the Plan. Ballots cast in respect of claims other than Allowed Claims will not be counted. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor is not solicited or procured in good faith, or in accordance with the provisions of the Bankruptcy Code.

4

### C. Classes Not Impaired Under the Plan

Claims by Holders in Class 2 (Priority Non-Tax Claims) pursuant to Section 1124 of the Bankruptcy Code are unimpaired under the Plan and therefore not entitled to vote on the Plan.

### D. Classes Impaired Under the Plan

Claims by Holders in Classes 1 and 3 and Interests in Class 4  are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan.  Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of any hearing, be determined by the Bankruptcy Court.

### E. Vote Required for Class Acceptance

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of holders of Allowed Claims in that Class who cast ballots.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of Interest holders as acceptance by holders of at least two-thirds (2/3) in amount of the allowed interests of such class who cast ballots.

If there are no votes in a class, the Debtor intends on seeking a ruling by the Bankruptcy Court that such class will have been deemed to accept the Plan.

### NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Debtor to the Debtor's known creditors pursuant to Section 1125(b) of the Bankruptcy Code.  The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference.  Parties in interest may view the Plan on the internet at http://www.nysb.uscourts.gov.[3]

The purpose of this Disclosure Statement is to enable you, as a Creditor to make an informed decision in exercising your right to consider whether to object to the Plan, and, if applicable, whether to vote for or against the Plan.

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court.  The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However, the Plan provides for the allowance of Acres' Claim in the amount of $34,496,796.81, plus interest from the Petition Date at the contract rate specified in the note underlying the Acres Claim and applicable fees and charges, though the amount of such claim that is Acres' Class 1 Secured Claim will depend on the results of the Sale process.

---

[3] A login and password are necessary for access to view documents on the Internet.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents.

While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Debtor, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

BACKGROUND

## THE DEBTOR AND ITS PROPERTY

The Debtor's business consists of ownership of the Property. The Property is a partially developed 22 story building intended as a hotel in downtown Brooklyn and is located at 291 Livingston Street, Brooklyn, NY 11217. The construction is approximately 95% completed.

## THE ACRES LOAN

**The Senior Loan**. On November 16, 2018, Acres made a loan to the Debtor (the "**Senior Loan**"), as evidenced by those certain Amended and Restated Mortgage Notes (Senior Loan), dated as of November 16, 2018 and those certain Mortgage Notes (Replacement Note - Senior Loan), dated as of March 18, 2019, in the aggregate principal sum of $7,500,000.00, (collectively, the "**Senior Loan Note**"), secured by that certain Amended and Restated Senior Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of November 16, 2018 (the "**Senior Loan Mortgage**"), executed by the Debtor in favor of Acres and encumbering the Property. Further reference is made to that certain Senior Loan Agreement dated as of November 16, 2018, as amended by that First Amendment to Senior Loan Agreement dated May 14, 2021, that Second Amendment to Senior Loan Agreement dated September 30, 2021, and that Third Amendment to Senior Loan Agreement dated March 24, 2022 (collectively, the "**Senior Loan Agreement**"), executed by the Debtor in favor of Acres. The Senior Loan Note, Senior Loan Mortgage, Senior Loan Agreement and all documents evidencing and securing the Senior Loan are hereinafter referred to as the "**Senior Loan Documents**");

**The Building Loan.** Acres made an additional loan to the Debtor (the "**Building Loan**") as evidenced by those certain Mortgage Notes (Building Loan), dated as of November 16, 2018 and those certain Mortgage Notes (Replacement Note – Building Loan), dated as of March 18, 2019, in the aggregate principal sum of $14,964,097.54 dated as of November 16, 2018 (collectively, the "**Building Loan Note**"), secured by that certain Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of November 16, 2018 (the "**Building Loan Mortgage**"), executed by the Debtor in favor of Acres and encumbering the Property. Further reference is made to that certain Building Loan Agreement dated as of November 16, 2018, as amended by that First Amendment to Building Loan Agreement dated May 14, 2021, that Second Amendment to Building Loan Agreement dated September 30, 2021, and that Third Amendment to Building Loan Agreement dated March 24, 2022 (collectively, the "**Building Loan Agreement**"), executed by Debtor in favor of Acres. The Building Loan Note, Building Loan Mortgage, Building Loan Agreement and all documents evidencing and securing the Building Loan are hereinafter referred to as the "**Building Loan Documents**");

**The Project Loan**. Acres made an additional loan to the Debtor (the "**Project Loan**", together with the Senior Loan and the Building Loan, the "**Loans**"), as evidenced by those certain Mortgage Notes (Project Loan), dated as of November 16, 2018 and those certain Mortgage Notes (Replacement Note – Project Loan), dated as of March 18, 2019, in the aggregate principal sum of $6,535,902.46 (the "**Project Loan Note**", together with the Senior

Loan Note and Building Loan Note, the "**Notes**"), secured by that certain Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of November 16, 2018 (the "**Project Loan Mortgage**", together with the Senior Loan Mortgage and Building Loan Mortgage, the "**Mortgages**"), executed by the Debtor in favor of Acres and encumbering the Property. Further reference is made to that certain Project Loan Agreement dated as of November 16, 2018, as amended by that First Amendment to Project Loan Agreement dated May 14, 2021, that Second Amendment to Project Loan Agreement dated September 30, 2021, and that Third Amendment to Project Loan Agreement dated March 24, 2022 (collectively, the "**Project Loan Agreement**", together with the Senior Loan Agreement and Building Loan Agreement, the "**Loan Agreement**"), executed by Debtor in favor of Acres. The Project Loan Note, Project Loan Mortgage, Project Loan Agreement and all documents evidencing and securing the Project Loan are hereinafter referred to as the "**Project Loan Documents**");

The Loans were further collateralized against the Debtor's membership Interests.

Pursuant to the Notes, the Loans matured on May 16, 2022 ("**Extended Maturity Date**"). Acres noticed a non-judicial foreclosure pursuant to the Uniform Commercial Code scheduled for December, 2022. The sale, however, never took place.

## THE DEBTOR'S BANKRUPTCY FILING

On June 2, 2023 (the "Petition Date"), the Debtor filed a petition (the "Petition") for Chapter 11 bankruptcy relief before this Court, which was executed by David Goldwasser, as CRO of the Debtor.

## SIGNIFICANT POST-PETITION EVENTS IN THIS CHAPTER 11 CASE

## THE PETITION AND SCHEDULES

The Debtor, in its Schedules identifies one secured creditor and 25 unsecured creditors. To date, 3 creditors have filed proofs of claim.

A Section 341 Meeting of Creditors was scheduled to be held on June 29, 2023 but was adjourned until July 12, 2023.

## RETENTION OF DEBTOR'S PROFESSIONALS

On June 12, 2023, the Debtor filed applications to retain and employ (a) Davidoff Hutcher & Citron LLP as Debtor's counsel [ECF No. 12] and (b) North Point Real Estate Group as Debtor's Real Estate Consultants and Broker [ECF No.13].

**BAR DATE**

In accordance with the requirements of Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. On July 6, 2023, the Bankruptcy Court entered an Order (the "Bar Date Order") [ECF No. 20] fixing September 1, 2023 as the last date for filing any and all non-governmental claims in this matter and December 22, 2023 for claims by governmental units (the "Bar Date").

The Plan provides that the Debtor may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

## SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement, and which is incorporated herein by reference.

The Debtor submits that the treatment of Creditors under the Plan is the same or better than the treatment Creditors would receive if the Chapter 11 Case were converted to a Chapter 7. Therefore, the Debtor submits that the Plan is in the best interests of the Creditors and the Debtor recommends acceptance of the Plan by holders of Claims in all Classes.

**THE PROPOSED SALE**

The Plan provides for the liquidation of the Debtor by selling the Debtor's only material asset, the Property (along with the Property Causes of Action), to generate proceeds to pay Allowed Claims of the Debtor's estate as more fully described herein and in the Plan.

The Debtor intends to sell the Property (and the Property Causes of Action) to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code. The closing of the Sale shall take place following the Auction in accordance with the Bid Procedures. In summary, the Broker will market the Property (and the Property Causes of Action) and conduct an Auction following confirmation and the lifting of the moratorium at which the Debtor will be entitled, within its discretion, to submit a credit bid in the Allowed amount of the Acres Secured Claim. The Closing shall take place after the Auction.

The winning bidder at the auction (the "Successful Bidder") shall take title to the Property (and the Property Causes of Action) free and clear of all liens, claims and encumbrances pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code, except that at

the Acres' discretion, the Successful Bidder may take the Property subject to Acres' mortgage.

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtor's estate with the distributions required to be made on the Effective Date, any shortfall will be funded by the Debtor's principals.

Upon completion of the Sale, the CRO and/or Davidoff Hutcher & Citron LLP, the Disbursing Agent, shall be authorized to execute any and all documents necessary to effectuate the conveyance of the Property (and the Property Causes of Action) in accordance with the terms of the Plan, including without limitation, Bargain and Sale Deeds with Covenants, a Bills of Sale and all required transfer tax returns and ACRIS documents.  Furthermore, on the Effective Date, the Debtor will provide the Successful Bidder, or its nominee, with an assignment and assumption of all unexpired leases or executory contracts that are subject of an Assumption Notice at the Property.

## Classification of Claims and Interests

Classification of claims is governed, in part, by Sections 1122 and 1123(a) of the Bankruptcy Code.  11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4).   11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into three (3) classes of Claims and one (1) class of Interests:

> **Class 1  -    Acres Secured Claim**
> **Class 2  -    Priority Non-Tax Claims**
> **Class 3  -    General Unsecured Claims**
> **Class 4 -     Interests**

As discussed above, Class 2 is unimpaired under the Plan and holders of claims or interests in such Class are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and no voting or balloting will be conducted of the creditors or interest holders in such Classes under the Plan.  Classes 1 and 3 are impaired under the Plan and holders of claims or interests in such classes will receive a ballot to vote on the Plan.  As set forth in Article 2 of the Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

10

**Class 1 – Acres Secured Claim.** Class 1 consists of the Acres Secured Claim. The Plan allows the Acres Claim at $34,496,796.81 as of the Petition Date, plus default interest, fees and costs after the Petition Date. The amount of the Acres Secured Claim shall be determined based on the extent to which the Acres Claim is secured by an interest in the Property, which shall be determined by the amount of net proceeds received from the Sale of the Property. To the extent that the Acres Claim is not secured by an interest in the Property (which shall be determined by the proceeds received from the Sale of the Property), the resulting unsecured portion of the Acres Claim shall constitute a Class 3 General Unsecured Claim for voting but not distribution purposes. The Acres Secured Claim in Class 1 is Impaired under the Plan.

**Class 2** – **Priority Non-Tax Claims**. Class 2 consists of Priority Non-Tax Claims. The Debtor believes there are no such Claims. Class 2 Claims are not Impaired under the Plan.

**Class 3** – **General Unsecured Claims**. Class 3 consists of all General Unsecured Claims including all Claims based on filed mechanics' liens. Class 3 Claims aggregate the approximate amount of $3,100,000. Class 3 Claims are Impaired under the Plan

**Class 4 – Interests.** Class 4 consists of all Equity Interests. The Interests in Class 4 are unimpaired under this Plan.

### TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Article 4 of the Plan provides for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 – Acres Secured Claim.** The holder of the Allowed Class 1 Secured Claim will receive on account of such claim on or about the Effective Date either a distribution of Available Cash sufficient to allow for payment in full of the Acres Secured Claim or the Property following a successful credit bid.

**Class 2- Priority Non-Tax Claims** The holder of Allowed Class 2 Priority Non-Tax Claims, if any, will receive on account of such claim on or about the Effective Date a distribution of Available Cash sufficient to allow for payment in full of the Allowed Priority Non-Tax Claim.

**Class 3 – General Unsecured Claims**. Subject to the provisions of Article 6 of the Plan with respect to Disputed Claims, and with the exception of the holder of the Acres General Unsecured Claims who waives any distribution under the Plan on account of their Class 3 Acres General Unsecured Claims, each holder of an Allowed Class 3 General Unsecured Claim will receive on account of such claim a pro rata distribution of Available Cash after all payments to Class 1 Claims, the Class 2 Claim, Statutory Fees, Priority Tax Claims and Administrative Claims and interest from the Petition Date onwards at the contract rate as to Claims in Class 1, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest; provided, however, that if either (a) Acres (or its nominee, assignee or designee) is the Successful Bidder based on a credit bid or (b) there

11

are insufficient net Sale proceeds to provide a 10% distribution to Class 3 General Unsecured Claims other than Acres, the Debtor's principals will provide, within 30 days after the Sale Closing Date, a distribution up to 10% to each holder of Claims in Class 3 other than the Acres Unsecured Claim, with Acres agreeing to waive the right to receive any distribution as a member of this Class, such that Class 3 Claim holders (other than Acres) will each receive no less than 10% on account of their Allowed Class 3 General Unsecured Claims under this Plan.

**Class 4 – Interests.** Holders of Allowed Class 4 Interests shall continue to retain and maintain such Interests following the Effective Date of the Plan in the same percentages as existed as of the Petition Date. Additionally, to the extent that there is any Available Cash after full payment of all Statutory Fees, Administrative Claims and all Unclassified and Classified Claims, with interest from the Petition Date onwards at the rates set forth in the applicable Note as to the Claim in Class 1, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest, each holder of an Allowed Class 4 Interest shall receive such remaining Available Cash, pro rata, in accordance with their respective percentage interests in the Debtor.

### TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under Section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees.  Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim. The Debtor estimates that the total amount of professional fees and expenses during the Chapter 11 Case will total approximately $150,000.  It is not believed that there will be any other Administrative Claims in this case (aside from the Broker's commission, which shall be paid via a buyer's premium).

Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Allowed Administrative Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, provided, however, that any Allowed Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the

terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is fourteen (14) days after entry of the Confirmation Order.

**Bankruptcy Fees.** All fees and charges assessed against the Debtor or its Estate under Section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges. It is estimated that Bankruptcy Fees and charges will be approximately $0, as it is estimated that the sale of the Property will not generate interest above the credit bid, or such greater sum as necessary to satisfy the Office of the United States Trustee.

**Professional Fees.** 11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtor's retained professionals pursuant to Section 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court.

DISPUTED CLAIMS

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor by any Entity.

**Time to Object.** After the Effective Date, the Creditor Trust, in consultation with the Oversight Committee, shall have authority to file, prosecute, settle, compromise, withdraw or resolve objections to Claims as they see fit in its discretion. The rights of anyone who has objected to such Claim(s) prior to the Effective Date as to such objection shall be transferred to the Creditor Trust. After the Effective Date, the Creditor Trust, in consultation with the Oversight Committee, may file, prosecute, settle, compromise, withdraw or resolve objections to any other Claims. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, the Creditor Trust, in consultation with the Oversight Committee, may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of

such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

### DISTRIBUTIONS UNDER THE PLAN

Article 8 contains provisions governing the making of Distributions on account of Claims and Interests. In general, except as otherwise provided in the Plan, and subject to Sections 8.7, 8.8 and 8.9 of the Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five (5) days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim, or (iii) such other times provided in this Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Southern District of New York.

**Disbursing Agent.** Davidoff Hutcher & Citron LLP will act as the Disbursing Agent in order to make Distributions under the Plan for all claims against the Debtor's Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond. The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

### UNCLAIMED DISTRIBUTIONS

Any distribution that is returned to the Disbursing Agent shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution"). A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder. If such a notice is provided, then, after receipt of such additional information as the Disbursing Agent may require to confirm the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter. All

Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim. However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such Distribution. The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims. Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan, except the mortgage of WB Bridge held by 159 Broadway 1 to the extent it is assigned to the Successful Bidder's lender. In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Debtor shall not be relieved of, and shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the later of (i) one Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by this Plan to waive such condition and the Sale has closed.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All Executory Contracts or Unexpired Leases to which one of the Debtor is a party as of the Effective Date, other than residential leases, which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Lease is listed as assumed and assigned to a Successful Bidder on a notice to be filed by the Successful Bidder with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Successful Bidder on the counterparty to each such Executory Contract or Unexpired Lease, no later than fourteen (14)

days prior to the Effective Date.

**Rejection Claims**.  Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Debtor a proof of claim within 21 days after service of the Assumption Notice or the expiration of the deadline to serve the Assumption Notice.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan as against the Debtor, subject to objection by the Debtor. After receipt of such proof of claim, the Debtor shall have 14 days to file an objection, failing which such Claim shall be an Allowed Claim.

## TRANSFER OF THE PROPERTY

Except as otherwise provided in the Plan, all of the assets and Property of the Debtor's Estate shall vest in the Disbursing Agent or, as to the Property and the Property Causes of Action, the Successful Bidder, free and clear of all Liens, Claims and encumbrances (except to the extent such Property is sold subject to Acres' lien). The Debtor shall cooperate with the execution of any and all documents needed to facilitate all transfers pursuant to the Plan, including the Property and the Property Causes of Action. On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Furthermore, on the Effective Date or as soon as practicable thereafter, all insurance claims and proceeds thereof to which the Debtor was entitled, shall be assigned to the Disbursing Agent for liquidation and distribution in accordance with the Plan.

## FUNDING

The Plan will be funded by monies made available from the Sale of the Property (and the Property Causes of Action); however, the Debtor's principals shall advance such funds as are necessary to make payments required under the Plan if the Sale proceeds are insufficient to fund all payments required under the Plan, as provided in section 6.2 of the Plan.

The Disbursing Agent shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan, and the Debtor shall not interfere with the Disbursing Agent in the performance of its duties. The Confirmation Order shall contain appropriate provisions consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

**PRESERVATION OF RIGHTS OF ACTION**

On the Effective Date all Property Causes of Action shall be transferred to the Successful Bidder.

**POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES**

The Debtor's duty to prepare and file post-confirmation monthly operating reports shall continue until the closing of this case by means of a final decree, dismissal or conversion of this case, whichever is earlier. Within 10 days of the Effective Date or as soon as practicable thereafter, the Disbursing Agent shall file a closing report detailing all disbursements made at the closing on the Property. All outstanding quarterly fees and any applicable interest due thereon payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until entry of a final decree, conversion or dismissal, whichever is earlier.

**TRANSFER TAXES**

Pursuant to Section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the deed conveying the Property in accordance with the Sale and any deed further conveying the Property with two years following the Sale by the Successful Bidder or its affiliate or designee) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan. In connection therewith, the Successful Bidder shall have the protections afforded under the "good faith" purchaser provisions of Section 363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

**REVOCATION OF THE PLAN**

The Plan may be altered, amended, modified or withdrawn by the Debtor at any time before Substantial Consummation of the Plan, as provided in Sections 1101(2)(A) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of Sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if the Debtor files a modification to the Plan, pursuant to Section 1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of Section 1127(a); however, the proponent of a modification to a plan must comply with Section 1125 of the Bankruptcy Code with respect to the plan as modified.

The Debtor may revoke or withdraw the Plan at any time prior to Substantial Consummation of the Plan subject to the consent of Acres. If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing

contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

### RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

### RISK FACTORS

Plan payments are to be made from the Sale proceeds and, if necessary, the funds provided by the Debtor if there is a shortfall of the amounts necessary to make the Plan Effective as provided in section 6.2 of the Plan. There can be no assurance that the Sale of the Property will occur.

## CONFIRMATION OF THE PLAN

All Distributions to holders of Allowed Claims are contingent on the Plan being confirmed by this Court. Otherwise, neither the Disbursing Agent nor the Debtor is obligated to make the payments required hereunder.

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on September __, 2023 at 10:00 a.m. in the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601** (although the hearing may be conducted remotely due to COVID)**.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing. Due to the COVID epidemic and related concerns, the Confirmation Hearing may be conducted telephonically or by video conference. Please check with the website for the Bankruptcy Court to obtain more details: https://www.nysb.uscourts.gov (login and password required).

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before September __, 2023 at 5:00 p.m.** Objections must be served upon (i) Counsel to the Debtor, Davidoff Hutcher & Citron LLP, 120 Bloomingdale Road, Suite 100, White Plains, NY 10605 – Attn: Jonathan S. Pasternak, Esq. and Robert L. Rattet, Esq. (ii) counsel to Acres, Kriss & Feuerstein LLP, 360 Lexington Avenue, Suite 1200, New York, NY 10017 – Attn: Jerold C. Feuerstein, Esq. and Daniel Zinman, Esq. and be filed electronically in accordance with the Court's ECF procedures.

### REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor was liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a Chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in Chapter 11.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under Chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

**Liquidation Analysis.** The Debtor has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals or exceeds the distribution that such person would receive if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the liquidation of the Debtor's assets, but avoids the additional costs and expenses that would be incurred in Chapter 7, such as trustee's fees. In addition, Plan provides for the payment by the Debtor's principals to the General Unsecured Claims in the amount of 10% of each Allowed Class 3 Claim. In Chapter 7, such payment would not occur.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the Sale of the Property to the Successful Bidder and for the Debtor's principals to satisfy any shortfall in the event such Sale does not generate sufficient cash to make the payments required under the Plan. Thus, the Plan meets the feasibility requirements of the Bankruptcy Code.

## EFFECT OF CONFIRMATION

### LIMITATION OF LIABILITY

*Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to Section 1125(e), as set forth in Article 8 of the Plan, neither the Debtor or its nominee(s), nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released to the extent provided by Article 9 of the Plan.*

20

**INJUNCTION**

*Except (a) as otherwise provided in the Plan; (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court; or (c) as to Acres' lien to the extent the Property is sold subject to such lien, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: (y) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.*

*Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor or from the Property or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.*

**RELEASE**

*Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to Acres' liens); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under this Plan (except to the extent that such Property is sold subject to Acres' lien).  Since this Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.*

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtor's Chapter 11 Case.

The Debtor believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in Chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Debtor reserves its right to file an amended plan and/or disclosure statement.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; and (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH**

**CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) Counsel to the Debtor, Davidoff Hutcher & Citron LLP, 120 Bloomingdale Road, Suite 100, White Plains, NY 10605 – Attn: Jonathan S. Pasternak, Esq. and Robert L. Rattet, Esq. and be filed electronically in accordance with the Court's ECF procedures. Documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, and are ordinarily available for public inspection Monday through Friday, between the hours of 8:30 a.m. and 5:00 p.m.

[The remainder of this page has been left intentionally blank]

## CONCLUSION

The Debtor believes that confirmation of the Plan is in the best interests of all Creditors.


Dated:  White Plains, New York
        July 7, 2023

                              **DAVIDOFF HUTCHER & CITRON LLP**

                    By:     */s/ Jonathan S. Pasternak*
                            Jonathan S. Pasternak
                            Robert L. Rattet
                            120 Bloomingdale Road, Suite 100
                            White Plains, New York 10605
                            (914) 381-7400

                            *Attorneys for the Debtor*

                              **HELLO LIVINGSTON EXTENDED LLC**


                    By:     */s/ David Goldwasser*
                            David Goldwasser, CRO

24